TAM:TBS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | CR. NO. 3:CR-05-064 |
|---|---|---|
| | ) | (Judge Vanaskie) |
| v. | ) | |
| | ) | |
| LOUIS PAGNOTTI, III | ) | (Electronically filed) |

### GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE REMEDY OF DISMISSAL OF THE ENTIRE INDICTMENT

**I.     Statement of Procedural History**

On February 9, 2005, a federal grand jury sitting in Harrisburg, Pennsylvania, returned a 22-count indictment charging Defendant Louis Pagnotti, III and codefendant Frank Pavlico with conspiracy to launder drug trafficking proceeds in violation of 18 U.S.C. § 1956(h) (Count One), charging Pavlico alone with three offenses (Counts Two through Four), charging Defendant Pagnotti with 15 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Five through Nineteen), charging Defendant with misprision of a felony in violation of 18 U.S.C. § 4 (Count Twenty), charging Defendant with obstruction of justice in violation of 18 U.S.C. § 1512(c)(1) (Count Twenty One), and seeking the criminal forfeiture of currency and other assets derived from and traceable to property derived from unlawful drug trafficking pursuant to 18 U.S.C. § 982 (Count Twenty Two).

On April 1, 2005, Defendant moved to dismiss the indictment on the ground that the United States had used his December 3, 2003 grand jury testimony, compelled under a

formal grant of immunity, to obtain the indictment.  On May 17, 2006, a different grand jury returned a superseding indictment against Defendant Pagnotti, charging him with, in addition to the offenses charged against him in the original indictment, perjury before a federal grand jury in violation of 18 U.S.C. § 1623.  Defendant moved to dismiss the superseding indictment, requesting a hearing in accordance with <u>Kastigar v. United States</u>, 406 U.S. 441 (1972), to determine whether the United States had used Defendant's immunized testimony to obtain the superseding indictment.  That <u>Kastigar</u> hearing was held September 20, 2006.

On November 8, 2006, with the motion to dismiss the original and superseding indictments pending, the United States obtained a second superseding indictment against Pagnotti from yet a third grand jury.  This second superseding indictment was identical to the first superseding indictment, except that it did not include the perjury count.  The United States used a fourth grand jury to obtain a one-count indictment against Defendant charging him with the perjury charge that had first been brought in the first superseding indictment, which charge was docketed to a different number than the original and two superseding indictments.  The effect of the government's decision to obtain the second superseding indictment and the separate perjury indictment was to insulate the grand jury that would for the third time return the substantive money laundering, conspiracy, and related charges from Defendant's immunized and compelled grand jury testimony, while

permissibly using that immunized grand jury testimony as the corpus of the perjury charge brought before a different grand jury.

Discounting the original and first superseding indictment, therefore, Defendant stood charged in the 19-count second superseding indictment with conspiracy to launder drug trafficking proceeds in violation of 18 U.S.C. § 1956(h) (Count One), with 15 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two through Sixteen), with misprision of a felony in violation of 18 U.S.C. § 4 (Count Seventeen), with obstruction of justice in violation of 18 U.S.C. § 1512(c)(1) (Count Eighteen), and with seeking the criminal forfeiture of currency and other assets derived from and traceable to property derived from unlawful drug trafficking pursuant to 18 U.S.C. § 982 (Count Nineteen). He stood charged by separate indictment with perjury before a federal grand jury in violation of 18 U.S.C. § 1623.

Defendant moved to dismiss the second superseding indictment, but not the indictment charging perjury, on the same <u>Kastigar</u> and Fifth Amendment grounds on which he had moved to dismiss the original and first superseding indictments. On September 4, 2007, this Court filed a memorandum Opinion and Order granting Defendant's motion to dismiss the second superseding indictment on <u>Kastigar</u> and Fifth Amendment grounds. The Court's Order separately dismissed Count Seventeen of the second superseding indictment, the misprision of a felony count by consent of the parties.

## II. Statement of Relevant Facts

As set forth above, on December 3, 2003, Defendant's testimony before the grand jury was compelled, in exchange for a grant of formal immunity, which amounted to both "use" and "derivative use" immunity. The grand jury that returned the second superseding indictment was not exposed to Defendant's compelled and immunized grand jury testimony before a different grand jury. The same prosecutor presented all four indictments, however.

Defendant's immunized testimony related to two financial transactions or series of transactions he had had with Frank Pavlico. The first financial transaction with Pavlico about which Defendant testified was a purported loan of $150,000 by Defendant to Pavlico in August 2000, effected by Defendant's transfer of a $150,000 certificate of deposit (CD) at Fidelity Deposit and Discount Bank (Fidelity Bank) into Pavlico's name. (Exhibits in Support of Second Brief of United States in Opposition to Defendant Pagnotti's Motion to Dismiss Superseding Indictment, Exhibit F (hereinafter "Exhibit F"), at pp. 11-12.) Prior to Defendant's compelled testimony, the United States had been aware of a $150,000 promissory note from Pavlico to Defendant evidencing the "loan." (Memorandum Opinion dated September 4, 2007 (hereinafter "Opinion"), at p. 6, Finding of Fact No. 8.) The Court found, however, that the United States had not been aware of Defendant's transfer of the Fidelity Bank CD until Defendant testified to this fact. (Opinion at 6, Finding of Fact No. 9.) The Court also found that the United States failed

to show at the Kastigar hearing that it had connected the CD to Defendant prior to Defendant's compelled grand jury testimony. (Opinion at 6, Finding of Fact No. 9, n.5.)

The other series of financial transactions about which Defendant testified before the grand jury was a series of purported consulting fees Defendant had paid Pavlico in August through October 2000. (Exhibit F at 12-16.) The United States had already been aware of these transactions, as well as of Defendant's characterization of them as consulting fees, prior to Defendant's compelled grand jury testimony, since Defendant had informed agents he had paid "tens of thousands of dollars to Pavlico or maybe closer to $100,000" for Pavlico's "consulting services." (Attachment B at 1-2.) The Court's Opinion makes no finding to the contrary.

The November 8, 2006 second superseding indictment alleged Defendant's purchase of the $150,000 CD and the transfer of the CD to Pavlico as overt acts 9 and 10 in furtherance of the money laundering conspiracy charged as Count One. (Second Superseding Indictment dated November 8, 2007 (hereinafter "2d Supsd. Indictment") at 3.) The indictment also alleged these acts, as well as Pavlico's redemption of the CD, as substantive money laundering Counts Eight, Nine, and Ten. (2d Supsd. Indictment at 11.)

The second superseding indictment also alleged Defendant's payment to Pavlico of $116,000 in "consulting fees" in August through October 2000, as overt acts 12, 13, and 14 in furtherance of the money laundering conspiracy charged as Count One. (2d Supsd.

5

Indictment at 4.) The indictment went on to allege these acts as substantive money laundering counts Eleven, Twelve, and Thirteen. (2d Supsd. Indictment at 11-12.)

III.    **Argument**

**Dismissal of the Entire Second Superseding Indictment, as Distinguished from Dismissal of Certain Alleged Overt Acts and Substantive Money Laundering Counts and Suppression of Evidence Derived from Immunized Testimony, Is an Excessive Remedy for the <u>Kastigar</u> Violation the Court Found.**

The United States believes the second superseding indictment alleges a provable money laundering conspiracy, as well as at least 13 provable substantive money laundering counts and provable obstruction of justice and forfeiture counts, even absent the indictment's allegations of overt acts 9 and 10 and money laundering Counts Eight, Nine, and Ten. These are the only allegations of the indictment that the Court's opinion specifically determines to have been based upon Defendant's immunized testimony.

Overt acts 11, 12, and 13, and money laundering Counts Eleven, Twelve, and Thirteen are demonstrably based upon information known to the United States and its investigative team prior to Defendant's compelled grand jury testimony, and the Court's opinion does not seem to find or suggest otherwise. The remaining overt acts and counts of the indictment relate to matters about which Defendant did not testify at all. The only question, then, is whether the United States made derivative use of Defendant's compelled grand jury testimony by pursuing investigative leads that led it to the evidence forming the basis for the remaining overt acts and counts alleged.

6

In this regard, the Court's factual determinations read as follows:

    7.    During his appearance before the grand jury on December 3, 2003, Pagnotti was questioned about financial transactions he had with Pavlico and his associated businesses. [Record citation omitted.] The United States specifically asked Pagnotti about a $15,000 promissory note that Pavlico gave him in August of 2000 in exchange for a loan, and whether Pagnotti transferred money to Pavlico in exchange for the promissory note. [Record citation omitted.] In response, Pagnotti testified that he loaned Pavlico the money to finance a business venture, and that Pagnotti funded the loan by transferring to Pavlico a $150,000 certificate of deposit ("CD") that Pagnotti had at Fidelity Deposit and Discount Bank ("Fidelity Bank"). [Record citation omitted.] He further testified that Pavlico did not pay his obligations associated with the loan.[Note and record citation omitted.] Pagnotti also explained his involvement in other financial transactions with Pavlico, including a consulting arrangement with Pavlico where Pavlico would find Pagnotti business opportunities. [Record citation omitted.] <u>At the time of his testimony, Pagnotti was not the subject of a federal criminal investigation</u>. [Record citation omitted.]

    \*                          \*                          \*

    9.    There is no competent evidence that the Government was aware that Pagnotti transferred a Fidelity Bank CD to Pavlico before Pagnotti gave his grand jury testimony.[Note omitted.] Indeed, Agent Grabinski told the grand jury that the Government had been unable to trace whether Pagnotti transferred money to Pavlico in exchange for the promissory note. ....

    10.    Shortly after Pagnotti testified before the grand jury, Assistant United States Attorney Gordon A. Zubrod discussed the substance of Pagnotti's immunized grand jury testimony with Agent Grabinski, including Pagnotti's statements about financial transactions with Pavlico. [Record citation omitted.] Agent Grabinski also read a transcript of Pagnotti's December 3, 2003, grand jury testimony. [Record citation omitted.] She discussed the testimony with other agents working with her. [Record citation omitted.]

    11.    Agent Grabinski admitted that she had hoped to learn about Pagnotti's financial dealings with Pavlico from his grand jury testimony. [Record citation omitted.] <u>She found Pagnotti's testimony concerning the financial transactions "suspicious</u>." [Record citation omitted.]

7

12. Afterwards, Agent Grabinski made further investigation into the financial transactions detailed in Pagnotti's testimony. [Record citation omitted.] She also subpoenaed Pagnotti's financial records to verify his statements. [Record citation omitted.]

13. <u>Based on information linking Doncses to Pavlico</u>, Agent Grabinski and other Internal Revenue Service agents interviewed Doncses at the Federal Prison Camp in Allenwood, Pennsylvania, on June 25, 2004. [Record citation omitted.] Doncses told the investigators that he converted marijuana trafficking proceeds into gold and silver. [Record citation omitted.] He said he discussed ways of laundering the drug trafficking proceeds with Pagnotti, whom he met through Pavlico. [Record citation omitted.] .... He also believed Pavlico and Pagnotti converted his gold and silver into cash.

\*     \*     \*

15. .... In obtaining the second superseding indictment, the Government traced a scheme to launder the drug proceeds earned by Doncses. [Record citation omitted.] First, Doncses converted proceeds from his marijuana trafficking activities into gold and silver. [Record citation omitted.] The gold and silver were transferred to Pavlico, then to Pagnotti, who sold it for approximately $400,000. [Record citation omitted.] Pagnotti deposited the proceeds of the sale into an account he maintained at the Old Forge Bank in Old Forge, Pennsylvania. [Record citation omitted.] Pagnotti purchased a $150,000 Fidelity Bank CD, using a check drawn from his Old Forge Bank account. [Record citation omitted.] He transferred the Fidelity Bank CD to Pavlico in exchange for a promissory note. Pagnotti also paid Pavlico three checks totaling $116,000 as "consulting fees." [Record citation omitted.]

(Opinion, 8-10, Finding of Fact Nos. 7-15.)

Assuming none of the Court's factual determinations is erroneous, those determinations lead to a conclusion that Defendant's immunized testimony was used as the basis for overt acts 9 and 10 and money laundering Counts Eight, Nine, and Ten, but that is all. To the extent that the "suspicious" nature of Defendant's compelled grand jury testimony caused him to become a subject or target of the investigation, this is because

8

the testimony was untruthful, not because it was self-incriminating. But the Court's remaining findings do not support a conclusion that Defendant's "suspicious" or untruthful testimony generated investigative leads that yielded the evidence forming the remaining allegations of the indictment.

To the contrary, the Court found as a fact that "[b]ased on information linking Doncses to Pavlico," agents interviewed Doncses, told them that he converted marijuana trafficking proceeds into gold and silver, that he had discussed ways of laundering the drug trafficking proceeds with Pagnotti, and that he believed Pavlico and Pagnotti converted his gold and silver into cash. (Opinion at 9, Finding of Fact No. 13.) [Emphasis added.] Proceeding from this fact, the Court found that "[i]n obtaining the second superseding indictment, the Government traced a scheme to launder the drug proceeds earned by Doncses," and the Court then described the scheme the government had traced, closely tracking the allegations of the indictment itself. But only one of these allegations--the allegation that "Pagnotti purchased a $150,000 Fidelity Bank CD, using a check drawn from his Old Forge Bank account"--is in any way related to information elicited from Defendant in his compelled grand jury of which the United States was arguably not already aware.

In other words, accepting the Court's factual findings as correct, those findings do not support a conclusion that the United States used Defendant's self-incriminating grand jury testimony to generate investigative leads that resulted in his indictment, but only

9

support a conclusion that the falsehood of Defendant's testimony prompted the United States to pursue other leads that ultimately implicated Defendant in the money laundering scheme. The Court's own factual findings support the inference that it was information possessed by the agents linking Doncses to Pavlico that caused them to interview Doncses and uncover the remainder of the scheme alleged in the indictment.

To meet its heavy burden under <u>Kastigar</u>, the United States must prove that <u>the evidence it proposes to use</u> was derived from legitimate independent sources. <u>United States v. Pantone</u>, 634 F.2d 716, 719 (3d Cir. 1980). This standard necessarily implies that suppression of evidence or dismissal of tainted individual counts of an indictment, as opposed to dismissal of the entire prosecution, will often be the proper remedy in a case where the court finds the United States has not met its burden.

The Second Circuit has developed this concept more fully, in both <u>United States v. Nanni</u>, 59 F.3d 1425, 1432-33 (2d Cir. 1995), and <u>United States v. Rivieccio</u>, 919 F.2d 812, 816 (2d Cir. 1990). As the court reasoned in <u>Nanni</u>,

> If the court finds that the government failed to establish by a preponderance that it did not use the immunized testimony, thus requiring the conclusion that there has been a Fifth Amendment violation, the appropriate relief will vary with the circumstances; .... [Citations omitted.] For example, if the government has presented immunized testimony to the grand jury, the indictment should be dismissed unless the government establishes that the grand jury would have indicted even absent that testimony. <u>See, e.g.</u>, <u>United States v. Riviecco</u>, 919 F.2d at 816 n.4; <u>United States v. Pelletier</u>, 898 F.2d at 303. If the government has presented immunized testimony to some other decisionmaker, such as a judge from whom a wiretap authorization is sought, the court should invalidate the decision and suppress the evidence unless the testimony presented "was so inconsequential ... that it could not have influenced the government's decision to seek or the

10

district judge's decision to issue the surveillance order." United States v. Gallo, 859 F,2d at 1079 (opinion of Winter, J.); see also id. at 1091 (opinion of Van Graafeiland, J.), concurring). If the government has not presented the grand jury with immunized testimony but has presented evidence obtained through the use of such testimony, the indictment is not to be dismissed, but the court should suppress the evidence. See. e.g., United States v. Rivieccio, 919 F.2d at 816. ....

Nanni, 59 F.3d at 1432-33. (Emphasis added.)

Here, the United States did not present Defendant's immunized grand jury testimony to the grand jury that returned the second superseding indictment, so the remedy should be suppression of evidence obtained through the use of the testimony, and by implication dismissal of the counts that are dependent upon such suppressed evidence, rather than dismissal of the entire indictment. "When the government violates 18 U.S.C. § 6002 by using immunized testimony before a grand jury, generally the remedy for the violation is the suppression of the tainted evidence at trial, not a dismissal of the indictment." Rivieccio, 919 F.2d at 816. (Emphasis added.)

As the Second Circuit further reasoned,

> Our holding on this score is not intended to alter in any fashion the two narrow exceptions to the general rule that facially valid indictments may not be challenged by allegations that the grand jury heard immunized testimony or otherwise tainted evidence. One exception we have applied is when the defendant testifies under immunity before the same grand jury returning the indictment or when the immunized testimony is placed before the indicting grand jury. In such cases we have held that the indictment must be dismissed. [Citations omitted.] The other exception we have recognized is when the government concedes that the indictment rests almost exclusively on tainted evidence. In that situation, we have held that a dismissal of the indictment is not an abuse of discretion. [Citation omitted.]

11

> Neither of these exceptions appl[ies] to the instant appeal. <u>The Grand Jury that heard Appellant's immunized testimony was *not* the same Grand Jury that indicted Appellant, and there is nothing in the record which suggests that his testimony was placed before the indicting Grand Jury</u>. Moreover, the Government has not conceded (nor has Appellant alleged) that the indictment rested almost exclusively on tainted evidence. This is not surprising, as the record would not support such a concession or allegation.

<u>Id.</u> at n.4. (Underscoring added; italics in original.)

Here, likewise, the grand jury that heard Defendant's immunized testimony was not the same grand jury that indicted Defendant, nor was his immunized testimony placed before the indicting grand jury. And the indictment here clearly does not rest almost exclusively on evidence gained by exploiting the immunized testimony.

Granted, the Third Circuit, unlike the Second, recognizes the impropriety of non-evidentiary use of immunized testimony, see <u>United States v. Semkiw</u>, 712 F.2d 891, 895 (3d Cir. 1983), but this should properly inform only the Court's decision whether there is been an impermissible use, not the decision what remedy to apply. Again, as the Third Circuit held in <u>Pantone</u>, 634 F.2d at 719, the government's burden is to prove that <u>the evidence it proposes to use</u> was not derived from the immunized testimony. As the court also held in <u>Pantone</u>, 634 F.2d at 720, once a prosecutor has access to compelled testimony, his use or derivative use of that testimony does not become unavoidable, such that the prosecutor and investigators who pursue the subsequent grand jury investigation must be denied access to the testimony. Nor does the fact that the incriminating grand

12

jury testimony might "provide the United States Attorney a degree of psychological confidence he might otherwise lack" constitute an impermissible derivative use.

For all of these reasons, the Unites States submits that, accepting all of the Court's factual determinations as correct, those determinations nevertheless do not warrant the dismissal of the entire indictment, but only require suppression of the evidence the court has found to have been obtained through use of Defendant's immunized testimony. This would result in dismissal of only overt acts 9 and 10 of the money laundering conspiracy charged as Count One, together with substantive money laundering Counts Eight, Nine, and Ten.

## IV. Conclusion

For all of the above reasons, the United States respectfully requests that the Court reconsider its Order dismissing the entire second superseding indictment and reinstate all of that indictment except for overt acts 9 and 10 of the money laundering conspiracy charged as Count One and substantive money laundering Counts Eight, Nine, and Ten; or, in the alternative, that the Court schedule a further hearing to determine which specific

allegations of the indictment are not based on evidence obtained through use of Defendant's immunized testimony.

                Respectfully submitted,

                THOMAS A. MARINO
                UNITED STATES ATTORNEY

                /s/ Theodore B. Smith, III
                THEODORE B. SMITH, III
                Assistant U.S. Attorney
                228 Walnut Street, P.O.Box 11754
                Harrisburg, PA 17108
                717/221-4482 (Office)/717/221-4493(Fax)
                Bar No. PA-29972

Dated: September 28, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:CR-05-064 |
| | ) | (Judge Vanaskie) |
| v. | ) | |
| | ) | |
| LOUIS PAGNOTTI, III | ) | (Electronically filed) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 28th day of September 2007, she served a copy of the attached

**GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR**
**RECONSIDERATION OF THE REMEDY OF DISMISSAL OF**
**THE ENTIRE INDICTMENT**

via electronic case filing and/or by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States mail at Harrisburg, Pennsylvania.

ADDRESSEE(S):
Patrick A. Casey
Myers, Brier & Kelly, LLP
P.O. Box 551
Scranton, PA 18501
570-342-6100
*pcasey@mbklaw.com*

                                              /s/ Mary Zerance
                                              Mary Zerance
                                              Legal Assistant